UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL L. HUBBEL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV1579 CDP |
| | ) | |
| PATRISH LLC, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before me on petitioner's motion for a temporary injunction under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).  Petitioner seeks an injunction barring respondent from violating several provisions of the Act pending final disposition of unfair labor practices charges currently before the National Labor Relations Board.  After the issues were fully briefed, I held a hearing on October 12, 2012 to permit the parties to present oral argument and evidence on the propriety of issuing the injunction.  After carefully considering the parties' briefs, the arguments of counsel, and the testimony and evidence presented at the hearing, I will grant petitioner's motion for the following reasons.

## Background Facts

Petitioner is the Acting Regional Director of Region 14 of the Board and filed this petition on its behalf.  Respondent is an extended stay hotel in St. Ann,

Missouri which had a union contract with Unite Here Local 74.  The most recent contract was effective from November 30, 2010 to November 29, 2011. According to the collective bargaining agreement, the bargaining unit includes "all housekeeping employees, including inspectress and houseman . . . ."  At the time the contract expired, the bargaining unit consisted of two members: inspectress Tamera Poetting and houseman Gary Wholdmann.  None of respondent's other employees are union members.

On July 21, 2011, Southside Temporaries provided respondent a rate quote for the inspectress and housemen work.  At the time, Southside was already providing respondent with other workers to help restore the hotel after a fire.  On October 15, 2011, the union representative Harry Moore told respondent that the union contract was about to expire and that the union would like to meet.  On November 21, 2011, Moore met with respondent's managing member Naresh Patel and its general manager Bill Thompson to discuss negotiating a successive collective-bargaining agreement.  At the meeting, Moore presented Patel and Thompson with the union's contract proposal.  Patel responded to that proposal by stating, "Harry, we don't have any need for union employees because it is all subcontracted out."  According to Patel, "The Union rep wanted us to sign a new agreement, and we refused because there was nothing for union employees to do

- 2 -

there.  There was no positions left; they had been subcontracted out to Southside."

Respondent admitted that when he met with Moore that "it did not make a

difference whether Moore wanted an increase or a decrease in pay because the

decision had been made to subcontract out the work."  The day the union contract

expired, respondent fired Poetting and Wholdmann and replaced them with

Southside employees who are doing Poetting and Wholdmann's jobs for a highly

hourly wage.  Respondent did not sign a new union contract.

     The union filed an unfair labor practices charge on May 11, 2012.

Following an investigation, petitioner found reasonable cause to support the

charge and filed a complaint and notice of hearing.  In the complaint before the

Board, petitioner alleges that respondent refused to bargain with the union for a

successor contract, unilaterally subcontracted all unit work, unilaterally terminated

all unit employees, and unlawfully withdrew recognition from the Union in

violation of 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5).[1]  A hearing

was held before an administrative law judge on August 27, 2012.  No decision has

been issued.

---

[1]Those provisions of the Act provide that it shall be an unfair labor practice for an
employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed
in section 157 of this title" and "to refuse to bargain collectively with the representatives of his
employees, subject to the provisions of section 159(a) of this title."

## Discussion

Section 10(j) allows the Board to petition a district court for temporary

injunctive relief pending resolution of an underlying case. The Act provides, in

pertinent part:

> The Board shall have power, upon issuance of a complaint as
> provided in subsection (b) of this section charging that any person has
> engaged in or is engaging in an unfair labor practice, to petition any
> United States district court . . . for appropriate temporary relief or
> restraining order.  Upon the filing of any such petition the court shall
> cause notice thereof to be served upon such person, and thereupon
> shall have jurisdiction to grant to the Board such temporary relief or
> restraining order as it deems just and proper.

29 U.S.C. § 160(j).  In deciding whether a § 10j injunction would be "just and

proper" under the Act, I must apply the preliminary injunction factors set out in

Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981).

Osthus v. Whitesell Corp.,639 F.3d 841, 844-45 (8th Cir. 2011) (citing Sharp v.

Parents in Community Action, Inc., 172 F.3d 1034, 1038-39 (8th Cir. 1999)).

These are:

> (1) the threat of irreparable harm to the movant; (2) the state of
> balance between this harm and the injury that granting the injunction
> will inflict on other parties litigant; (3) the probability that movant
> will succeed on the merits; and (4) the public interest.

Dataphase, 640 F.2d at 114; see also Chester ex rel. N.L.R.B. v. Eichorn Motors,

Inc., 504 F. Supp. 2d 621, 626-627 (D. Minn. 2007).  "In granting or refusing an

injunction, the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." Osthus, 639 F.3d at 845 (internal quotation marks and citations omitted). "Merely indicating the factual basis for the ultimate conclusion will suffice in most cases." Id. (internal quotation marks and citations omitted). However, the Court is required to "specially make factual findings, detailing specific actions in the bargaining process and the facts underlying each element of the four-factor injunction test." Id.

### A. Threat of Irreparable Harm to Petitioner

To obtain Section 10(j) injunctive relief, the Board must first show "the case presents one of those rare situations in which the delay inherent in completing the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices." Sharp, 172 F.3d at 1039. The irreparable harm to be demonstrated is not harm to individual employees; the Board must show a "harm to the collective bargaining process or to other protected employee activities if a remedy must await the Board's full adjudicatory process." Id. at 1038. Should the Board fail to make this showing, I need not consider the remaining three Dataphase factors. Id. at 1039. Irreparable injury under Section 10(j) is established when the alleged unfair labor practice "so chilled on-going protected

employee activity, such as collective bargaining or union organizing, that delay will frustrate the effectiveness of the Board remedies." Id. at 1040.   Petitioner asserts that respondent committed unfair labor practices by refusing to bargain with the union for a successor contract, unilaterally subcontracting all unit work, unilaterally terminating all unit employees, and unlawfully withdrawing recognition from the union.  Petitioner requests that I reinstate Poetting and Wholdmann and order respondent back to the negotiating table with the union. Petitioner contends that interim relief is necessary to preserve the status quo and to prevent frustration of the remedial purposes of the Act.  The Court agrees.  See Chester v. CMPJ Enterprises, 2007 WL 1994045, *2 (D. Minn. July 2, 2007) ("Injunctive relief has been found appropriate to either preserve the status quo or to prevent frustration of the basic remedial purposes of the Act . . . .").

Here, respondent completely eliminated the bargaining unit and replaced the union workers with non-union members after flat-out refusing to negotiate with the union.  This activity goes to the very heart of what the NLRA was enacted to protect.  See id. at *3.  Interim injunctive relief is necessary because it will likely be next May before the NLRB issues its final decision, and the longer respondent keeps the union at bay, the harder it will be for the union to regain support. Reinstatement of the displaced employees is part and parcel to the efforts to regain

- 6 -

union support at the hotel.  This is especially true here where respondent's actions eliminated the bargaining unit and none of the hotel's other employees are union members.  The unit members are currently unemployed, looking for work, and currently willing and able to return to work.  If interim reinstatement is not ordered, Poetting and Wholdmann may find alternative employment and be unable or unwilling to return to work, thereby frustrating the remedial purposes of the Act.

Respondent complains that it would be financially devastated if reinstatement and back pay were awarded.  It is important to note, however, that petitioner is <u>not</u> asking me to award back pay in this proceeding.  The issue of back pay is before the ALJ, not me.  However, respondent's claimed inability to afford back pay actually weighs in favor of interim relief because reinstatement cuts off any continued accrual of backpay.  As for respondent's claims that it cannot afford reinstatement, I find Patel's testimony at the October 12, 2012 hearing not credible on this issue.  The evidence submitted by petitioner in support of the motion demonstrates that the unit members were replaced with subcontractors who are paid a higher hourly rate of pay than Poetting and

Wholdmann.[2]  Patel's personal belief that he realizes unquantifiable, unspecified "efficiencies" by using subcontractors appears to be an <u>ad hoc</u> rationalization for respondent's apparent violations of the labor laws and is an insufficient basis upon which to deny interim relief.

Respondent argues against interim relief by claiming the request is untimely.  In support of this argument, respondent points out that the union waited five months after the collective bargaining agreement expired before it filed an unfair labor practices charge, and that petitioner waited ten months to seek temporary injunctive relief.  After considering the briefs and the arguments of counsel at the hearing, I do not find the request for interim relief to be untimely.  Petitioner acted diligently in pursuing this case once it was filed, and the Board did not unduly delay seeking interim relief.  As the district court held in <u>CMPJ Enterprises</u>, 2007 WL 1994045 at *3, "While the Court may take into consideration the timeliness of the petition, [it] is not required to do so.  Rather  . . . the appropriate focus is on whether it is necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial

---

[2]As for respondent's contention that it would be required to pay overtime if it reinstated Poetting and Wholdmann, petitioner correctly noted at the hearing that respondent is free to hire additional unit members, including temporary workers, to perform this unit work instead of paying overtime wages to Poetting and Wholdmann.  In any event, I find that Patel greatly exaggerated the amount of overtime hours, if any, that would be required if reinstatement were ordered.

powers under the NLRA, and whether achieving status quo is possible." (internal quotation marks and citation omitted).  Petitioner has met its burden of demonstrating irreparable harm in the absence of interim relief.

**B. Likelihood of Success on the Merits**

In addressing this factor, I must not second guess the Board's decision to commence enforcement proceedings.  <u>Sharp</u>, 172 F.3d at 1039.  This factor must not be examined in isolation, but "in the context of the relative injuries to the parties and the public."  <u>Id.</u> (internal quotation marks and citation omitted).  "The district court in a § 10j proceeding does not decide whether the respondent has committed unfair labor practices.  That is the province of the Board's ongoing adjudicatory proceeding, subject to judicial review by a court of appeals."  <u>Id.</u> "Instead, as we have explained, the district court in a § 10j proceeding examines likelihood of success on the merits as a relevant equitable principle once the General Counsel has established irreparable injury — extraordinary circumstances in which the alleged unfair labor practices threaten to frustrate the remedial purposes of the Act unless immediate action is taken."  <u>Id.</u>  This factor is relevant to the issuance of a preliminary injunction "because the need for the court to act is, at least, in part, a function of the validity of the applicant's claim."  <u>Id.</u> (internal quotation marks and citation omitted).

Petitioner asserts that respondent transferred work outside the bargaining unit, which is a mandatory subject of bargaining requiring notice and an opportunity to bargain.  See In re Suffield Academy, 336 NLRB 659, 671 (2001) ("[S]ubcontracting is a mandatory subject of bargaining.").  When Moore met with Patel and presented him with a contract proposal, Patel responded that "we don't have any need for union employees because it is all subcontracted out."  At the hearing before the ALJ, Patel testified that the union jobs had already been subcontracted out, so there were no union positions left.  The day the union contract expired, respondent terminated the two union employees and replaced them with non-union subcontractors.  Petitioner contends that respondent's actions violated  8(a)(1) and (5) of the Act.  "An employer violates § 8(a)(5) of the NLRA when it institutes a material change in the terms and conditions of employment in an area that is a compulsory subject of collective bargaining without giving the bargaining representative both reasonable notice and an opportunity to negotiate about the proposed change."  Porta-King Bldg. Systems, Division of Jay Henges Enterprises v. NLRB, 14 F.3d 1258, 1262 (8th Cir. 1994).

Here, respondent argues that petitioner is unlikely to succeed on the merits because subcontracting is not a mandatory subject of bargaining if it involves a substantial capital commitment or change in the nature, scope, or direction of the

business.  It also contends that it was not required to bargain with the unit because it has changed the scope of its business, with the hotel becoming more apartment-like.  Finally, respondent maintains that it was permitted to subcontract out the unit work under the terms of the expired collective bargaining agreement, which provides that "[f]rom time to time the Company shall hire outside contractors and employees of such contractors shall not be under the jurisdiction of the Union." The agreement also contains a management rights clause which gives respondent the right to "relieve employees from duty because of lack of work or for other legitimate reasons . . . ."  Respondent argues that this language amounts to a waiver by the union to bargain this issue and points to the ALJ'S request at the hearing that the parties focus their briefs on this issue.

Waiver of bargaining rights can occur by express provision in the collective bargaining agreement, by the conduct of the parties, or by a combination of the two.  American Diamond Tool, Inc., 306 NLRB 570 (1993).  In support of its position, respondent points to the fact that the union never filed a grievance when it reduced the bargaining unit from eight employees to two back in 2010 and when it hired a subcontractor to perform laundry services.

As for the allegation that it refused to bargain, respondent argues that the union waived its right to do so by failing to promptly request bargaining after

being notified that respondent intended to subcontract out work.  Petitioner

contends that the union's obligation in this regard was excused because the union

was presented with a fait accompli.  "The issues of fait accompli, request to

bargain, and waiver are related in the sense that a finding of fait accompli will

prevent a finding that a failure to request bargaining is a waiver."  UAW-Daimler

Chrysler National Training Center and Local 512, Office and Professional

Employees International Union, AFL-CIO, 341 NLRB 431 (2004).  "An employer

cannot implement a change and then claim that a union waived its right to bargain

by failing to do so retroactively.  To be timely, the notice must be given

sufficiently in advance of actual implementation of the change to allow a

reasonable opportunity to bargain."  Id. at 433.

It is not for me to decide whether respondent violated labor laws.  Here, the

contractual language and the union's conduct do not amount to a "clear and

unmistakable showing that the Union waived it right to bargain over" the

termination of the union employees in favor of subcontractors.  Id. at 1263 (waiver

of rights requires "clear and unmistakable showing").  When this factor is

considered in the appropriate context of whether to grant a 10(j) injunction,

petitioner has presented sufficient evidence to support its allegations that

respondent transferred work outside the bargaining unit without giving the union

notice and the opportunity to bargain.  Before the expiration of the collective

bargaining agreement, respondent told the union that they were not renewing the

contract because the union positions had already been taken by subcontractors.

The day the union contract expired, the union employees were fired and replaced

by subcontractors.  No bargaining unit members remain at the hotel.  Although

Patel now equivocates about his prior statements to Moore and tries to soften their

impact with after-the-fact assurances that he remains willing to negotiate with the

union, it is clear that he flatly refused to do so.  As for the union's prior conduct,

petitioner has presented evidence that the union had no knowledge of respondent's

prior use of subcontracting services or the reduction in bargaining unit members

until it was too late to grieve these actions.  Finally, the language of the collective

bargaining agreement does not, as respondent claims, give it the right to

unilaterally eliminate the bargaining unit in favor of subcontractors.  For these

reasons, the Court finds that petitioner has presented sufficient evidence to

establish a likelihood of success on the merits, so this factor weighs in favor of the

requested injunctive relief.

### C. Balance of Harms

Petitioner argues this factor weighs in favor of injunctive relief because, if

relief is granted, respondent will have competent, experienced employees who can

perform the job successfully and respondent admits that it can terminate its

subcontract at any time without notice or cost.  Moreover, petitioner argues that

any alleged increased cost to rehiring displaced workers is minimal and only

temporary.  I have already addressed respondent's arguments that an award of

interim relief would cause grave financial harm to respondent, so I do not repeat

those findings and conclusions here.  I find that the balance of harms weighs in

favor of issuing interim injunctive relief, where respondent incurs no costs to

terminate the subcontractors and reinstate the unit members.  Respondent

maintains its managerial rights to discipline and supervise these employees, and

reinstatement effectuates the purposes of the Act because respondent will not

continue to accrue back pay.  Moreover, any interim bargaining order would not

require respondent to agree to particular terms or conditions of employment, only

to bargain with the union in good faith.  Given petitioner's likelihood of success

on the merits, coupled with the recognized gravity of harms posed to the collective

bargaining rights of the employees if interim relief is not awarded, I find that the

balance of harms weighs in favor of injunctive relief.

### D. Public Interest

Finally, petitioner argues the public interest is served by protecting the

underlying remedial purposes of the Act.  Although it would certainly not be in the

public interest if respondent was forced to close its hotel, I do not find that to be a potential harm if interim injunctive relief is awarded in this case.  The Court finds that the public interest in protecting employees' rights, preserving the remedial power of the Board, and safeguarding the collective bargaining process weighs in favor of issuing interim injunctive relief.

<u>Conclusion</u>

For all these reasons, after careful consideration of all the evidence and briefs, I find that petition is entitled to injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Respondent, its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with it or them, pending the final disposition of the matters involved herein pending before the Board, are enjoined and restrained from engaging in the following acts and conduct:

(a) Refusing to recognize and bargain in good faith with UNITE HERE Local 74 (Union) as the exclusive collective-bargaining representative of the employees in the following unit: All housekeeping employees, including inspectress and houseman, employed by Respondent at its St. Ann, Missouri facility, excluding office clerical employees, professional employees, guards, and supervisors as defined in the Act;

(b) Failing and refusing to adhere to the terms and conditions of employment set forth in the expired collective-bargaining agreement with the Union applicable to the employees in the unit described in paragraph 1(a) above until the parties bargain in good faith to an

- 15 -

agreement or to lawful impasse;

(c) Failing and refusing to make contributions to the Union's health and welfare, pension, and other funds as required by the 2010-2011 collective-bargaining agreement;

(d) Unilaterally contracting out work traditionally performed by the unit and terminating unit employees described in paragraph 1(a) above; and

(e) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

2. Respondent is hereby ordered to:

(a) Rescind the subcontract covering all housekeeping employees in the unit described in paragraph 1(a) above, displacing as necessary the employees of the subcontractor;

(b) Upon request, recognize and bargain in good faith with the Union as the exclusive collective-bargaining representative of the employees in the applicable collective-bargaining Unit;

(c) Upon request, restore and continue to maintain the status quo ante for all terms and conditions of employment as provided in the collective-bargaining agreement with the Union;

(d) Within 5 days of this Order, offer immediate reinstatement to Tamera Poetting and Gary Wholdmann to their former jobs without prejudice to their seniority or any other rights or privileges previously enjoyed;

(e) Within 14 days of this Order, post copies of the order at the Employer's St. Ann, Missouri facility in all places where the Employer's notices to employees are customarily posted. Said postings shall be maintained during the pendency of the Board's

proceedings free from all obstructions and defacements, and agents of the Acting Regional Director of Region 14 of the Board shall be granted reasonable access to the Employer's St. Ann, Missouri, facility to monitor compliance with this posting requirement; and

(f) Within 14 days of this Order, submit to the Acting Regional Director of Region 14 of the Board, a sworn affidavit from a responsible Employer official describing with specificity the manner in which the Employer has complied and will continue to comply with the terms of the District Court's decree, including the location of the documents to be posted under the terms of this decree.

**IT IS FURTHER ORDERED that** this case shall remain on the docket of this Court and on compliance by Respondent with its obligations undertaken hereto, and upon disposition of the matters pending before the Board, the Petitioner shall cause this proceeding to be dismissed.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2012.